### JOHNSON v CLIFTON et

Ohio Appeals, 2nd Dist, Clark Co

No 345.   Decided Dec 26, 1934

H. W. Houston, Urbana, and E. L. English, Columbus, for plaintiff in error.

Todd, Tehan & Lorentz, Springfield, and Kiefer & Kiefer, Springfield, for defendants in error.

## OPINION

By BARNES, J.

The single question for determination is as to whether or not, under the facts and the law the note was cancelled on June 5, 1931 at the time the plaintiff, Mrs. Johnson conveyed the premises to Nellie Cotter. The determination of this question requires a search of the record as to whether or not there was an agreement, either express or implied, between the plaintiff and defendant Clifton for a cancellation of the note and second, was the note as originally executed a payment of the installments in default, or was it merely additional or collateral security on the contract? We will first consider the question as to whether or not the record discloses an agreement either express or implied to cancel the note.

In the court below the cause was submitted on an agreed statement of facts

supplemented by the testimony of the defendant Jessie A. Clifton.

The original contract of sale is attached as an exhibit. We find nothing in the record supporting the theory of agreement to cancel. On page 8 in the direct examination of the defendant Clifton, we find the following:

"Q. And you signed over to Mr. Cotter all your interest in the contract—releasing all rights under the contract?

A. Yes.

Q. What was said at that time between yourself and Mrs. Johnson regarding the contract?

A. Mr. Cotter was to take over the property and relieve me of all debts.

Q. Was there anything said at that time about this note?

A. No not at that time."

At the bottom of page 9 the following:

"Q. Was there anything said at the time you surrendered the contract as to your obligation—what they would be under the contract, when you gave it up?

A. I supposed I was to be relieved of all debt."

In the cross examination on page 12:

"At that time you didn't pay Mrs. Johnson anything did you? (Referring to June 5, 1931).

A. No.

Q. Nor did you claim to her that this assignment paid the Spangenberger note?

A. Didn't discuss that at the time.

Q. After the transfer to Mrs. Cotter you still considered yourself liable on the note, didn't you?

A. I considered that cleared all my debt, —when the transfer was made.

Q. Was there any conversation had at all to the effect that the sale of this property to the Cotters would pay the Spangenberger note?

A. That wasn't discussed at that time.

Q. That was on June 5th, 1931, you assigned all of your right in the contract to Nellie Cotter?

A. Yes,—according to that.

Q. Now, on June 26th, 1931,—which was twenty days afterwards—you wrote a letter to Mrs. Iona Johnson R.F.D. 5, Urbana, Ohio as follows:

'Springfield, Ohio,
June 20, 1931.

Dear Madam—

I hereby direct that the money, notes and all proceeds received by you in the sale of the real estate for which I had a contract of sale, on Fostoria Avenue, Springfield, Ohio, which was recently sold by you, shall, after the payment of the mortgage thereon, be applied first to the payment of the note given to you signed by me and Edward F. Spangenberger as surety, dated May 7, 1930, due four months, for $508.21.

Yours very truly,
J. A. Clifton.'

You signed that letter?

A. Signed it.

Q. So that twenty days after you assigned your rights in this contract, you wrote a letter to Mrs. Johnson, telling her how to apply the proceeds of the sale of the property?

A. I signed the letter, yes.

Q. And you don't make any claim that Mrs. Johnson ever said to you that your assignment of this land contract paid or cancelled the note which you and Mr. Spangenberger signed?

A. We never discussed that direct."

We find nothing in the record other than conclusions supporting any theory of agreed cancellation of the note. The last answer of the defendant Clifton wherein he says "we never discussed that direct" is determinative contra to any agreement of cancellation.

If any further evidence on this question should be necessary the unexplained fact that on June 5th, when property was transferred to Mrs. Cotter, defendant, Clifton, made no demand for the delivery to him of this note is a further circumstance contrary to the theory of cancellation by agreement.

The further fact that fifteen days later Clifton, by letter, directed as to how the notes should be paid is likewise opposed to a theory of cancellation by agreement. This letter very strongly contradicts the record wherein he gives his conclusion that he supposed he was to be relieved from all debt. When he wrote the letter his recollection on the subject would be better than when he presented his testimony. If anything had been said warranting the conclusion that the note was to be cancelled he would have written making demand for the delivery instead of being concerned as to the method of payment.

The fact that this letter was written by the administrator as representative of the surety and signed by Clifton at the admin-

istrator's request does not materially alter the inferences. Clifton says that he was called into the office of the administrator and discussed the question. If, at that time, Clifton had given any hint of an agreement of cancellation of note, counsel would not have prepared the form of letter as was mailed to the plaintiff, Mrs. Johnson.

There being nothing in the record supporting an express agreement for cancellation, there still remains the question of cancellation by implication. If the note in question was merely an additional or collateral security on the contract, then, of course, the cancellation of the contract would absolve the note in the hands of the original holder. In determining tihs question, it is again necessary to examine the record. We have before us in evidence the contract of sale and attached to the petition as an exhibit is a copy of the note sued upon. The note is in the usual form of commercial paper. Of course, no reference is made therein to the contract of sale. In the agreed statement of facts it is stipulated that the amount of the note was the equivalent of the past due installments on the contract of sale plus interest.

The due date under the note was four months after its execution, whereas the installments under the contract and interest was then past due. Under the contract the interest on installments was stipulated as being 6½%, whereas in the note the interest was paid in advance and then provided for 7% after due.

The contract of sale was unsecured and thereon Clifton alone was liable. The note was secured and the decedent Spangenberger was the surety. In the record, under the agreed statement of facts, it is disclosed that Mrs. Johnson accepted the note "in lieu of the cash." If Mrs. Johnson had paid in cash the $508.21 and all other facts were the same, no claim could successfully be made that she would be entitled under the agreed statement of facts that the note was accepted "in lieu of cash" is an agreed determination that it was not received as additional or collateral security to the note. It is elementary that in the absence of any agreement to the contrary, money is the sole medium of payment. **Volume 31 O. Jur. (Payment, §49, page 162).** Also we take the following from the last paragraph of the above section on page 163:

"Money, is not, however, essential to payment, as where payment is made with that which the parties treat as its equivalent."

Applying this principle to the instant case it is agreed that the note sued upon was accepted in settlement of the defaulted payments on the contract "in lieu of cash." We also make reference to §63 of **Volume 31, O. Jur.** under title "Payment."

"In general, a higher security taken from the debtor himself extinguishes the original contract. This proceeds on a presumption of law that it is taken in satisfaction of the original debt; but if it appears otherwise on the fact of the security, it will not operate as an extinguishment."

Also §64:
"The acceptance by the creditor of something other than money in the payment of an obligation amounts to a waiver of his right to money. A creditor to whom a tender of payment is made in a medium other than the constitutional currency may expressly waive any objection to the quality of the proposed medium of payment, and bind himself to such express waiver, at least until he shall have retracted his approval of the medium of payment offered, and notified the debtor that he demands payment in coin."

Also see 21 R.C.L., §34 under subject "Payment":
"In the absence of any agreement to the contrary money is the sole medium of payment. This does not mean that nothing else may be used to discharge a debt. On the contrary anything which a debtor delivers and a creditor accepts in discharge of an obligation is a payment thereof, and the creditor cannot thereafter repudiate his act."

Also see §45 R.C.L.
"In the absence of statutory restrictions the parties to an agreement at the time of entering into or at any other time may waive payment in money, and the promisee may agree to accept in payment notes, checks, drafts, or any other thing of value. In other words the parties to a contract may agree as to the medium of payment and their contract will be enforced."

Under all the facts in the record we think there is but one inference and that is that the secured note was accepted by Mrs.

Johnson in payment of the defaulted installments on the contract of sale. This inference is made positive when the agreed statement of facts says that it was accepted "in lieu of cash."

It is our conclusion that no evidence is presented tending to support the defense as presented in the answer of either defendant. There being no general or special denials of the petition it therefore follows that the plaintiff should recover.

Coming now to enter the judgment that the lower court should have entered, under the motion for instructed verdict, judgment will be entered for the plaintiff as per the prayer of the petition.

HORNBECK, PJ, and KUNKLE, J, concur.